# SCHNEIDER v. DRIGGS.

PATENTS; INTERFERENCE; CONCEPTION AND REDUCTION TO PRACTICE; EVI-
DENCE; DISCLOSURE; TESTS.

1. Where the senior party in interference relies on his filing date for con-
ception and reduction to practice, and the junior party shows prior
conception, followed by diligence in reduction to practice, the junior
party will prevail.

2. Where the testimony in behalf of one of the parties in interference re-
lates to transactions with the government which might easily have
been disproved if not true, and the other party does not attempt to
rebut it, it is entitled to greater weight than the testimony in an
ordinary case.

3. The junior party to an interference involving the invention of an im-
provement in semi-automatic guns, held, upon a review of the evi-
dence, to have sufficiently established conception and disclosure prior
to the filing date of the senior party, where his testimony as to his
invention, the time it was made, its disclosure, and as to its embodi-
ment in practical form under his direction, was fully corroborated,
and not disputed.

4. The fact that a gun embodying the invention of the issue in interference
was manufactured by the company with which the junior party was
connected, and was, as a result of a competitive test, adopted by the
Navy Department as the standard gun of its type, and used as a
model for other guns thereafter ordered by the government, is the
best possible evidence of reduction to practice of the invention.

No. 644.   Patent Appeals.   Submitted November 10, 1910.   Decided De-
cember 5, 1910.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference case.                    Affirmed.

The facts are stated in the opinion.

Mr. S. T. Cameron, Mr. Reeve Lewis, and Mr. W. B. Kerk-
am for appellant.

*Messrs. Wilkinson, Fisher, & Witherspoon,* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding awarding priority of invention to the junior party, Louis L. Driggs, appellee here.

The subject-matter of the invention is sufficiently described in the claims of the issue, as follows:

"1. In a semi-automatic gun, the combination with the gun body and cradle, of one or more recoil cylinders, a main bolt journaled to the breech of the gun, breech mechanism operated by said main bolt, means on said main bolt for operating same automatically, a cylinder rigidly attached to said gun exterior to the recoil cylinder; a piston, piston rod, and a spring under compression, all mounted in said cylinder and all recoiling with the gun, a connection between said piston and said main bolt, and mechanism operated on counter-recoil for opening the breech against the action of said spring.

"2. In a semi-automatic gun, the combination with the gun body and cradle, of one or more recoil cylinders, a main bolt journaled to the breech of the gun, breech mechanism operated by said main bolt, means on said main bolt for operating same automatically, a cylinder rigidly attached to said gun exterior to the recoil cylinder; a piston, piston rod, and a spring under compression, all mounted in said cylinder and all recoiling with the gun, means for varying the compression of said spring, a connection between said piston and main bolt, and mechanism operated on counter-recoil for opening the breech against the action of said spring."

Charles Prosper Eugene Schneider filed his application November 14th, 1905; Driggs on April 13th, 1906. Schneider depends entirely for conception and reduction to practice upon the filing date, August 3rd, 1905, of his application for a French patent. If, therefore, Driggs's evidence shows conception, followed by diligence or reduction to practice prior to that date, he must prevail. The Examiner of Interferences

ruled that his evidence falls short of establishing either proposition.    The Examiners-in-Chief, after an exhaustive examination of the evidence, said: "To sum up the evidence, we believe that the testimony shows that the Driggs-Seabury Corporation prior to June 3d, 1905, did complete a 3-inch semi-automatic gun containing the subject-matter of the issues, and that the fact that this gun had been actually built by the company with which Driggs was connected, and that his connection with that company had not been disputed by his opponents, is sufficient corroboration of his statements in regard to conception and disclosure of the invention.    His testimony as to reduction to practice by means of the test at Sharon, Pennsylvania, between June 3d and June 14th, 1905, is sufficiently corroborated by proof that this gun was shipped to the Washington Navy Yard, and after test by the Navy Department, without any change in the gun, was used as a pattern from which final drawings were made, to serve as a basis for guns subsequently contracted for by the Navy Department."    The Commissioner also gave the case the careful attention which its importance demands, and sustained the findings of the Examiners-in-Chief.

At the outset it is well to note the distinction between this case and cases involving a small and easily changed device or structure.    It is also well to bear in mind the fact that much of Driggs's testimony and that of his witnesses related to transactions with the government, and that such testimony might easily have been disproved if not correct.    In other words, the surrounding circumstances in such a case as this are entitled to greater weight than in an ordinary case.    Appellant having taken no testimony in rebuttal, Driggs's evidence must be accepted, unless it is inherently unreasonable or lacking in completeness.    Let us here subject it to a brief analysis.

Driggs himself, whose testimony each of the tribunals of the Patent Office has found to be full and definite, studied theoretical and practical ordinance and gunnery at the United States Naval Academy, resigned in 1889 to go into the manufacture of ordnance, and has, since that time, been actively engaged in designing ordnance.    Prior to his work on the gun here

involved, he had taken out patents on breech mechanism, safety devices, firing mechanisms, automatic guns, semi-automatic guns, and gun mounts, some of which were adopted and used by both Army and Navy. He testifies that he conceived the invention of the issue in the early part of 1903, and soon thereafter commenced drawings thereof; that on July 7th of that year, the Navy Department was induced to give his company an order for a type or sample gun; that work on this gun was commenced soon thereafter, but, owing to unavoidable delays, was not finished until May, 1905, when the gun was tested at the company's proving ground in Pennsylvania, and in June, 1905, shipped to the government's proving ground at Indian Head, Maryland, for participation in the competitive trials which began in that month and continued until October following. Mr. Driggs was present at the Indian Head test, where each gun participating therein was fired upwards of 100 times. As a result of the test, he testifies, the Navy adopted his gun as its standard 3-inch, semi-automatic gun; that at the time he testified his company was constructing 25 guns of this type for the Navy Department; that the American & British Mfg. Co. of Bridgeport, Connecticut, was manufacturing 40 more, paying a royalty of $150 per gun; that the Washington Navy Yard was manufacturing 112 more, paying $100 per gun royalty; that the original gun was still at the Navy Yard unchanged and subject to inspection.

No one was called by Mr. Driggs to testify as to the test made in Pennsylvania, except the secretary and treasurer of the company who possessed no technical knowledge of the gun structure. This witness saw the gun fired, but his testimony on the question of reduction to practice is of no value. The witness, however, does testify very specifically and satisfactorily as to the time when the gun was completed, tested in Pennsylvania, and shipped to Washington to be tested at Indian Head. Freight vouchers were produced which corroborated the witness in detail. Driggs also produced the company's mechanical engineer, a Mr. Hughes, whose testimony is also direct and satisfactory. Mr. Hughes first visited the com-

pany's works in Pennsylvania in May, 1905, examined this gun, was engaged by the company, and, on June 5th, 1905, entered upon his duties. He then carefully familiarized himself with the mechanism of the gun, which was the only 3-inch gun at the works. After the gun had been brought back to the Washington Navy Yard from the Indian Head proving ground, Mr. Hughes was sent to Washington by his company, as he testifies, to "measure it (the gun) up carefully, and to prepare a final set of working drawings for submission to the Navy Department for the starting of work on the contracts for similar guns of this type, which were about to be built at our own works and the Washington Navy Yard. While in Washington I prepared these drawings from measurements taken from the original gun, and these drawings are now in use by the Navy Department in their manufacture." Mr. Hughes testified that this remeasurement was necessary because "the original gun had been constructed at Sharon with extreme haste, and in some small details the dimensions shown on the drawings in evidence had not been absolutely followed. That is, that errors in dimension, varying sometimes between a few hundredths and a few thousandths of an inch, had crept into the manufacture, and the Navy Department insisted that the new drawings should represent the gun as it stood precisely, and, further, that the size of the drawing, the method dimensioning and marking pieces should conform to the Washington Navy Yard standards." He testifies positively that there were no changes made in the mechanism. Blue prints of those parts of the working drawings which showed the invention were offered in evidence, the originals being in the Navy Department. We do not deem it necessary to analyze further the testimony of this witness.

It is insisted by the appellant that Driggs should have called as witnesses one or more of the officers who witnessed the tests at Indian Head, should have introduced further evidence as to his conception and disclosure of the invention, and that as the case stands he has not proven either conception, disclosure, or reduction to practice. In advancing these contentions, it

is apparent that appellant has entirely failed to appreciate the character of this case. He has attempted to apply a rule applicable to an entirely different situation. Driggs filed his application, in which he made oath that he was the inventor of the claims in issue. He testified as to when he invented them, to his disclosure of them, and to the subsequent embodiment under his direction of his invention in practical form. All the circumstances tend to corroborate his claim of invention, and no one disputes this claim. We think, therefore, that the argument that he has not established conception and disclosure must fail.

We have no greater difficulty in disposing of the second contention. It is established beyond question that the gun, which was constructed by the Driggs Company prior to June, 1905, and tested at Sharon, Pennsylvania, was shipped to the government proving ground at Indian Head, Maryland, late in June, 1905, there thoroughly tested, and, as a result of this test, was adopted as the standard gun of this type; that the same gun was taken back to the Navy Yard at Washington and used as a model for the other guns which the government ordered; that it embodied the elements and each of the elements of the issue. Not a word of tesitmony was introduced by appellant, and yet we are asked to find that the fact that the government fired this gun 100 times, adopted it as its standard, ordered over 150 more, did not amount to a reduction to practice. To so find would be equivalent to a finding of negligence or incompetency against the Navy Department. The fact that this gun, as the result of a competitive test, was adopted by the Navy Department, is, in our view, the best possible evidence of reduction to practice. At the time this testimony was taken the gun was public property, had been under the exclusive control of government officials since a time anterior to appellant's foreign filing date, upon which he relies for disclosure and constructive reduction to practice. If, therefore, that gun had been changed in any way, or if it had not embodied all the elements of the issue, appellant could very easily have brought out or established the real facts. He has not done so, and we are not dis-

posed to set aside the evidence in the case, and decide it upon evidence that might have been introduced.

The decision of the Commissioner was right, and is affirmed. The clerk will certify this opinion as by law required.

*Affirmed.*